**The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Dated: July 6 2017

John P. Gustafson
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No.: 12-32449 |
| | ) | |
| Logan R. Irons, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Adv. Pro. No. 16-3120 |
| | ) | |
| Logan R. Irons, | ) | Hon. John P. Gustafson |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| Leon Maginnis, Successor Trustee of the D. | ) | |
| Ross Irons Amended and Restated | ) | |
| Declaration of Trust, et al., | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OF DECISION AND ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AND DENYING DEFENDANT MAGINNIS' AND PLAINTIFF'S MOTIONS FOR SUMMARY JUDGMENT

This adversary proceeding is before the court on Defendant Leon Maginnis' (or "Maginnis") "Motion to Dismiss or in the Alternative for Summary Judgment" ("Maginnis' Motion") [Doc. # 4], Defendant Bellevue Farm, LLC's ("Bellevue") Motion to Dismiss ("Bellevue Motion") [Doc. # 5], Plaintiff Logan R. Irons' ("Plaintiff") Motion for Summary Judgment ("Plaintiff's Motion") [Doc.

# 24], Plaintiff's Memorandum in Opposition to Defendants' Motions and in Support of Plaintiff's Motion ("Plaintiff's Memo") [Doc. # 25], Maginnis' Reply to Plaintiff's Motion and Memo ("Maginnis' Reply") [Doc. # 28], Bellevue's Memorandum in Opposition to Plaintiff's Motion and Reply to Plaintiff's Memo ("Bellevue's Memo") [Doc. # 29], and Plaintiff's Reply to Bellevue's Memo ("Plaintiff's Reply") [Doc. # 30]. Plaintiff is the debtor in the underlying Chapter 7 bankruptcy case. Defendant Maginnis is the trustee of the Amended and Restated Declaration of Trust for D. Ross Irons (the "Irons' Trust" or "Trust"), and Defendant Bellevue is the purchaser of the trust interests that were sold by the Chapter 7 Trustee.

In his complaint, Plaintiff seeks declaratory and injunctive relief relative to an alleged right he has to reside in the residence ("Residence") owned by the trust of Plaintiff's late father, D. Ross Irons. Plaintiff argues that his right to occupy the Residence, which was set forth in the Irons' Trust, was not and could not have been transferred to Bellevue, the purchaser of the trust interests sold by the Chapter 7 Bankruptcy Trustee. [Doc. # 24-1, p. 1]. Defendants Maginnis and Bellevue both argue that dismissal of the Complaint is proper pursuant to Fed. R. Civ. P. 12(b)(6), as they allege that the court-approved sale of the Irons' Trust assets included all rights and interests of Plaintiff, including the right of occupancy in the Residence. Further, due to *res judicata* principles, Defendants believe that the court-approved sale of the Irons' Trust rights cannot now be questioned.

For the reasons that follow, the court will grant Defendants' Motions to Dismiss and deny Defendant Maginnis' and Plaintiff's Motions for Summary Judgment.

## BACKGROUND

Unless otherwise noted, the following facts are undisputed. On June 14, 2000, Plaintiff's late father caused to be made a trust agreement, which was amended and restated on June 26, 2006. [Doc. # 1-2, Pl. Ex. B, Irons' Trust]. The Irons' Trust granted Plaintiff's mother a life estate in the Trust's residential real property located at 5625 State Route 113, Bellevue, Ohio. Article IX(2), titled "Right of Residency", set forth that if the Trustor (D. Ross Irons)'s spouse were to survive the Trustor, the Trustee was to "permit the Trustor's spouse to reside in the residential real property. . . ." [*Id.,* p. 8]. Article IX(2)(a) provides that:

> During the period following the death of the Trustor in which the Trustor's spouse resides in the Trustor's principal residence . . . the successor trustee shall pay any and all real property taxes or assessments, including interest and penalties thereon, as well as any and all homeowner's insurance premiums such as maintained by the

Trustor as of his date of death, or as may be typical in the geographic area for residences of similar value.

[*Id.*].

Article IX(2)(c) establishes that the right of residency and the financial obligations of the Trust incident thereto terminate upon the occurrence of any of three events: 1) the death of the Trustor's spouse; 2) the voluntary or involuntary establishment of a new permanent residence by the Trustor's spouse; and 3) the remarriage or co-habitation with another of the Trustor's spouse. [*Id.*, p. 8-9].

Article IX(4)(a)(ii), titled "Management of Residential Real Property", states the following:

> The Successor Trustee shall retain in the Trust Estate the Trustor's residential real property . . . Said right of residency as it pertains to [Plaintiff], shall occur in the event of the death of the Trustor's spouse, or the termination of her right of residency as such is defined in Article IX(2) of this Trust Agreement. Should [Plaintiff] wish to reside in such residential real property, he shall be permitted to do so under the same terms and conditions as provided the Trustor's spouse under Article IX(2) of this Trust Agreement . . . .

[*Id.,* p. 10].

The Irons' Trust also provided that upon the termination of the right to reside in the real property, the property shall be managed and distributed and conveyed as provided in Article IX(4) of the Irons' Trust. [*Id.*, p. 9]. The Trustor, D. Ross Irons, died on or about July 6, 2006, and until September 30, 2016, his wife Linda Irons resided at the Residence. [Doc. # 5, p. 18].

Plaintiff filed for relief under Chapter 7 of the Bankruptcy Code on May 25, 2012. [Case No. 12-32449, Doc. # 1].[1] At the time the petition was filed, John N. Graham (the "Chapter 7 Trustee") was appointed as the interim Chapter 7 Trustee, and he has continued in that capacity as the duly appointed trustee. In Debtor's originally filed Schedule C [Case No 12-32449, Doc. # 10, p. 13] and Amended Schedule C [*Id.,* Doc. # 27, p. 27], Debtor did not claim that any or all of his interest as

---

[1]/ In connection with a Rule 12(b)(6) motion, courts may consider beyond the pleadings matters of which the court may take judicial notice without converting the motion to one for summary judgment under Rule 56. *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir.1999); *see,* Fed.R.Civ.P. 12(d). The court takes judicial notice of the contents of its case docket and the Debtor's schedules. Fed. R. Bankr.P. 9017; Fed.R.Evid. 201(b)(2); *In re Calder*, 907 F.2d 953, 955 n. 2 (10th Cir.1990); *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F .2d 1169, 1171–72 (6th Cir.1979) (stating that judicial notice is particularly applicable to the court's own records of litigation closely related to the case before it).

3

a beneficiary of the Irons' Trust were exempt.

On April 30, 2014, the Chapter 7 Trustee filed an adversary proceeding in this court. [Case No. 14-3055, Doc. # 1]. The Chapter 7 Trustee's complaint sought a declaratory judgment that Plaintiff's interests in the "Property Rights of the . . . Trust are assets of the Bankruptcy Estate." [*Id.,* Doc. # 1, ¶ 25]. Count One of the Complaint was dismissed without prejudice in an agreed order [*Id.,* Doc. # 39], and summary judgment was granted in favor of the Chapter 7 Trustee on the remaining two counts. Specifically, the order granting summary judgment [*Id.,* Doc. # 34] held that:

> [T]he interests of [Plaintiff] as a limited partner in the D. Ross Irons Partnership . . . and as a beneficiary of the D. Ross Irons Trust Agreement dated June 14, 2000 and as amended and restated on June 26, 2006 are held to be assets of the Bankruptcy Estate in Case No. 12-32449 . . . .

[*Id.,* at p. 3].

Plaintiff did not object to or appeal the order granting summary judgment, and he did not assert in Case No. 14-3055 that any interest of his was excluded from his Chapter 7 Bankruptcy Estate.

On September 16, 2015, the Chapter 7 Trustee filed a "Motion to Sell Assets of the Estate Pursuant to 11 U.S.C. 363, to Designate and Approve a Stalking Horse Purchaser, to Establish Bid Procedure for the Stalking Horse Sale Hearing and Consideration of Bid Protections in Connection Therewith" ("Sale Motion"). [Case. No. 12-32449, Doc. # 293]. The Sale Motion referenced the court's order granting summary judgment in the 2014 adversary case, stating that

> . . . the Court entered an Order declaring that the interests of [Plaintiff] as a limited partner in the partnership and as a beneficiary of the Trust are assets of the bankruptcy estate and that all future distributions that would otherwise have been made to [Plaintiff] are to be made to the Trustee . . .

[*Id.,* ¶ 5].

The Sale Motion defined the "Assets" involved in the sale as follows: 1) the interests of Plaintiff as a beneficiary of the Trust; 2) the future distributions set forth in Paragraph 5 of the Sale Motion; and 3) the Patronage Dividends as defined in Paragraph 6 of the Sale Motion. [*Id.,* ¶¶ 5-7]. Debtor-Plaintiff was properly served with the Sale Motion and did not file an objection. The Sale Motion was set for hearing [*Id.,* Doc. # 298], notice of which was properly served on Debtor-Plaintiff. [*Id.,* Doc. # 299]. At the hearing on the Sale Motion, Counsel for Debtor appeared

telephonically.  He did not object to the Sale Motion (either on the record at the hearing, or by filing an objection during the 10 day objection period), nor did he assert that any of Debtor's interests pursuant to the Trust be excluded from the sale. [Case No. 12-32449, Doc. # 302].

Because no objection was raised to the Sale Motion, and finding the motion otherwise proper, the court signed the Nunc Pro Tunc Agreed Order ("Sale Order") on November 20, 2015. [*Id.*, Doc. # 308].  The Sale Order stated the following:

> The Trustee is authorized to sell any and all of [Plaintiff's] interests in D. Ross Irons First Family Limited Partnership created on or about May 19, 1994, ("the Partnership") and any and all interests as a result of the Debtor being designated a beneficiary of the D. Ross Irons Trust Agreement created on or about June 14, 2000 and subsequently amended and restated on June 26, 2006 . . .

[*Id.*, ¶ 2].

The Sale Order also authorized the Chapter 7 Trustee to take the following action:

> The Trustee is authorized to sell any and all of the [Plaintiff]'s rights under either the Partnership or the Trust to all distributions from the Partnership and Trust until such entities are liquidated and Debtor's interests referred to in Paragraph Two (2) above are distributed.

[*Id.*,¶ 3].

Paragraphs 2 and 3 of the Sale Order, in addition the Chapter 7 Trustee's authorization "to sell any and all rights of the Plaintiff to any future patronage dividends that may be declared by Ag Credit, ACA related to the years 2010 and 2013" were the defined "Assets" to be sold pursuant to the Sale Order. [*Id.,* ¶¶ 4-5].  Plaintiff received proper notice of the Sale Order and did not appeal nor attempt to stay the Order. [*Id.,* Doc. # 309].

The Sale of the Assets took place on February 25, 2016.  The successful bidder was "Mr. Chris D. Jeffries and/or his designee, Bellevue Farm, LLC" [Doc. # 5, ¶ 23], with a final bid of $150,000.00. [Case No. 12-32449, Doc. # 333, ¶ 2].  On March 23, 2016, a "Motion to Approve Stalking Horse Sale, to Approve Proposed Purchase Agreement and Authorize Payment of Break Up Fee" was filed [*Id.,* Doc. # 334], which included the Asset Purchase Agreement ("APA") attached as Exhibit A. [*Id.,* Doc. # 334-1].  The Assets described in the Asset Purchase Agreement were the same assets set forth in Paragraphs 2-5 of the Sale Order. [*Id.,* Doc. # 334-1, p. 2].  Plaintiff did not file an objection to the Motion to Approve the Sale, nor did he assert that any interests under

the Irons' Trust were to be excluded for the sale.

The court entered an Agreed Order "Granting Trustee's Motion to Approve Stalking Horse Sale, the Proposed Purchase Agreement to Carryout the Terms of the Sale and Authorizing the Payment of the Breakup Fee to the Stalking Horse Bidder" ("Sale Confirmation Order") on April 14, 2016. [Case No. 12-32449, Doc. # 339]. The Sale Confirmation Order ordered that

> [A]ny and all of the [Plaintiff]'s interests in the D. Ross Irons First Family Limited Partnership created on or about May 19, 1994 ("the Partnership"), and any and all interests resulting from the [Plaintiff] being designated a beneficiary of the D. Ross Irons Trust Agreement created on or about June 14, 2000 and subsequently amended and restated on June 26, 2006 ("the Trust"), and any and all rights of the Debtor to any future patronage dividends that may be declared by Ag Credit, ACA ("Ag Credit") related to the years 2010 and 2013 (the "Dividend" and together with the Partnership and Trust "the Assets") shall be vested, subject only to the closing and completion of the terms of the Purchase Agreement, in Bellevue Farm LLC . . .

[*Id.,* Doc. # 339, ¶ 4].

The Sale Confirmation Order further ordered that the Assets transferred to the buyer, Bellevue, "shall be free and clear of any and all liens, claims or interests, including but not limited to any and all claims, known or unknown, that could have been asserted by . . . any beneficiary or beneficiaries of the Trust . . . against the Assets . . ." [*Id.,* Doc. # 339, ¶ 6]. The Sale Confirmation Order was properly served on Plaintiff and Plaintiff's Chapter 7 Counsel. [*Id.,* Doc. # 340]. Plaintiff did not appeal the Sale Confirmation Order or seek to stay its implementation.

A Report of the Completion of the Sale Pursuant to Bankruptcy Rule 6004 was filed by the Chapter 7 Trustee on May 13, 2016. [*Id.,* Doc. # 341]. The Report confirmed that the closing of the sale had been completed, and attached as an Exhibit was the Assignment of Trust Interest [*Id.,* Doc. # 341-1], which stated:

> By Court Order, John N. Graham, Trustee of said Bankruptcy Estate, shall sell, assign and transfer the beneficial interest of [Plaintiff] in the D. Ross Irons Trust Agreement originally dated June 14, 2000 and amended and restated on June 26, 2006 (the "Trust Interest") to the buyer, Bellevue Farm LLC, an Ohio limited liability company.
>
> NOW, THEREFORE, John N. Graham, Trustee of said Bankruptcy Estate, hereby irrevocably sells, assigns and transfers the Trust Interest to Bellevue Farm LLC.

[*Id.*].

At some point on or before September 30, 2016, Plaintiff's mother moved from the Residence and no longer intended to reside at the property. [Doc. # 1, ¶ 10; Doc. # 5, ¶ 33]. Maginnis contacted Bellevue and requested that it waive what he believed was, after the Sale Confirmation Order, Bellevue's right of residency/occupancy in the Residence, which would allow Maginnis to market and sell the Residence for the benefit of the remaining Irons' Trust beneficiaries. [Doc. # 5, ¶ 34]. Bellevue indicated that it is agreeable to waive the right of residency/occupancy in the Residence that it believes it owns and controls.

On October 12, 2016, in correspondence between Plaintiff's Chapter 7 Counsel and Maginnis, Maginnis informed Plaintiff that he was "not persuaded that [Plaintiff] retain[ed] a right of residence after the sale of his interests in the Trust and Partnership." [Doc. # 1-3, Pl. Ex. C]. As such, Maginnis intended to sell the property located at 5625 State Route 113, Bellevue, OH 44811. [*Id.*].

Plaintiff filed the current adversary case on October 20, 2016 [Doc. # 1], seeking both an order declaring that his right to occupy and reside in the Residence was not sold to Bellevue and injunctive relief enjoining Maginnis from selling the Residence and prohibiting him from interfering with Plaintiff's alleged right to occupy and reside in the Residence. [*Id.*].

## LAW AND ANALYSIS

### I. Motion to Dismiss Standard

A motion brought by a defendant to dismiss an adversary proceeding is governed by Federal Rule of Civil Procedure 12(b), made applicable to this proceeding by Bankruptcy Rule 7012(b). Federal Rule of Civil Procedure 12(b) enumerates seven separate grounds upon which a motion to dismiss may be based.

Defendants' Motions to Dismiss are based upon their assertions that the two counts of Plaintiff's Complaint fail to state claims upon which relief could be granted, due to Plaintiff being barred by the court's prior orders and rulings and the doctrine of *res judicata*, specifically, claim preclusion or estoppel by judgment. [Doc. # 4, p. 5; Doc. # 5, p. 12, ¶ 39].

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a pleading for a "failure to state a claim upon which relief can be granted[.]" In considering a motion to dismiss under Rule 12(b)(6), the court must assume as true all the well-pleaded facts in the complaint and

7

view them in a light most favorable to the plaintiff, drawing all reasonable inferences in favor of the plaintiff. *Paige v. Coyner*, 614 F.3d 273, 277 (6th Cir. 2010); *Bower v. Fed. Express Corp.*, 96 F.3d 200, 203 (6th Cir. 1996). However, "a legal conclusion couched as a factual allegation" need not be accepted as true. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The purpose of such a motion is not to decide the merits of the case, but to test the legal sufficiency of the complaint. *Gibson v. Chicago*, 910 F.2d 1510, 1520 (7th Cir. 2005). The issue in a 12(b)(6) motion is, therefore, not whether the plaintiff is entitled to prevail, but whether the plaintiff is entitled to offer evidence in support of the claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Davis v. Scherer*, 468 U.S. 183 (1984).

## II. Summary Judgment Standard

Plaintiff and Maginnis have also filed motions for summary judgment on the Complaint. [Doc. # 4; Doc. # 24]. Under Rule 56 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056, summary judgment is proper only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In reviewing a motion for summary judgment, however, all inferences "must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-88 (1986).

The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, "and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party has met its initial burden, the adverse party "may not rest upon the mere allegations or denials of his pleading but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A genuine issue for trial exists if the evidence is such that a reasonable factfinder could find in favor of the nonmoving party. *Id*.

## III. A Right of Residency or a Life Estate?

Plaintiff asserts that the core question of this matter is whether the Right of Residency discussed in Article IX(2)(c) of the Irons' Trust was an interest able to be transferred or assigned

8

from Plaintiff to Defendant Bellevue, or extinguished, when he sold all of his rights and benefits under the Irons' Trust to Bellevue, as set forth in the Sale Motion, the Sale Order, the APA, and the Sale Confirmation Order. If the "right to reside" in the Residence was a transferrable interest, then Plaintiff's right to reside in the Residence was sold to Bellevue, and either Defendants' Motions to Dismiss or Maginnis' Motion for Summary Judgment should be granted. If it was not a transferrable interest, then Plaintiff asserts that its Motion for Summary Judgment should be granted. The facts necessary to answering such a question are not in dispute.

When a debtor files a petition for relief under Chapter 7 of the Bankruptcy Code, all equitable and legal interests that the debtor holds in property become property of the bankruptcy estate. 11 U.S.C. § 541(a); *U.S. v. Whiting Pools, Inc.,* 462 U.S. 198, 204, 103 S.Ct. 2309, 2313, 76 L.Ed. 2d 515, 521 (1983)("Congress intended a broad range of property . . . to be included in the estate."); *see also, In Re Prudential Lines, Inc.,* 107 B.R. 832, 839 n.16 (Bankr. S.D.N.Y. 1989).

However, property of the bankruptcy estate does not include any power that the debtor "may exercise solely for the benefit of an entity other than the debtor." 11 U.S.C. § 541(b)(1). Therefore, "[p]owers that a debtor may exercise for [his or her] own benefit are, therefore, included [in the bankruptcy estate], or there would be no need for the [§ 541(b)(1)] exemption." *In re Prudential Lines*, 107 B.R. at 837.

Plaintiff's Complaint asserts that "Plaintiff's contingent right to occupy and reside in the Property is not property of the Bankruptcy Estate." [Doc. #1, p. 4, ¶17]. The court finds that this allegation is incorrect. Even if the "right to reside" were, under Ohio law, a non-transferrable "power that the debtor may exercise", it is a power that the Debtor-Plaintiff may exercise for his own benefit. Accordingly, under federal bankruptcy law, even if the "right to reside" were held to be a legal right that could not be transferred under Ohio law, it would still be property of the Debtor's estate if it was not legally sold and transferred to Bellevue. The right to reside is "sufficiently rooted in his prepetition past to be included in property of his bankruptcy estate under § 541(a)." *Booth v. Vaughan (In re Booth)*, 260 B.R. 281, 290 (6th Cir. BAP 2001). Moreover, the fact that the interest was, at one point, contingent, does not prevent the right from becoming property of the estate as "courts have, across a wide variety of circumstances, almost uniformly adhered to the view that contingent interests are property of the estate under § 541(a)(1). *Booth*, 260 B.R. at 285. Finally, even if there were a state law restriction on the transfer of a "license", that would not

9

prevent the "right to reside" from becoming estate property. *See*, *Bavely v. United States (In re Terwillinger's Catering Plus, Inc.)*, 911 F.2d 1168, 1172 n.6 (6th Cir. 1990)("The bankruptcy code explicitly invalidates restrictions on the transferability of property that prevent property from becoming part of the bankruptcy estate. 11 U.S.C. § 541(c)(1).").[2]

Thus, it appears that the Debtor-Plaintiff lacks standing to assert the "right of residency", because even if Plaintiff were to succeed in his argument that the "right of residency" could not be conveyed, it would then remain part of the Chapter 7 estate. Property of the bankruptcy estate is subject to administration by the Chapter 7 Trustee for the benefit of the debtor's creditors. 11 U.S.C. § 323 & § 704. The right to "use" property of the estate is a right held by the Chapter 7 Trustee. *See*, 11 U.S.C. § 363(b)[3]; *In re Carrico*, 206 B.R. 447, 454 (Bankr. S.D. Ohio 1997)("By operation of §§ 323(a), 363(b)(1) of the United States Bankruptcy Code, only the Trustee had the authority to sell" the liquor license in issue).

To the extent that property of the estate has value that is above allowed secured claims and state and federal exemptions, it is subject to sale by the Chapter 7 Trustee under § 363(b)(1). As previously discussed, the scope of estate property is very broad, and it includes "all legally recognizable interests, including property not subject to possession until some future time." *Sicherman v. Ohio Public Employees Deferred Compensation Program (In re Leadbetter),* 992 F.2d 1216 (Table), 1993 WL 141068, 1993 U.S. App. LEXIS 10544 (6th Cir. 1993); *see also*, *In re Shelbyville Rd. Shoppes, LLC,* 775 F.3d 789, 795-96 (6th Cir. 2015).

The Irons' Trust was created in accordance with Ohio law, and contains a choice-of-law provision designating Ohio law as controlling. [Doc. # 1-2, p. 20, Article XXVII]. The existence of parties' property rights in bankruptcy generally depend on state law, *see, e.g., Butner v. United States*, 440 U.S. 48, 54-55, 99 S. Ct. 914, 917-18, 59 L. Ed. 2d 136 (1979), and the bankruptcy court applies the law of the state where the court sits, including the choice of law provisions. *Klaxon Co.*

---

[2]/ The Sixth Circuit has consistently held: "While the nature and extent of the debtor's interest are determined by state law 'once that determination is made, federal bankruptcy law dictates to what extent that interest is property of the estate.'" *Town Ctr. Flats, LLC v. ECP Commer. II LLC (In re Town Ctr. Flats, LLC)*, 855 F.3d 721, 724 (6th Cir. 2017), *citing*, *Terwillinger's Catering*, 911 F.2d at 1172.

[3]/ In Chapter 13, the right to "use" property of the estate is given to debtors by statute. *See*, 11 U.S.C. § 1303. There is no corresponding statutory grant to debtors in Chapter 7. *See*, 11 U.S.C. § 103(i)("Chapter 13 of this title applies only in a case under such chapter.").

v. *Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941); *Morgan v. Del Glob. Techs. Corp*, 2007 WL 3227068, at * 12, 2007 U.S. Dist. LEXIS 84638, at *33 (S.D. Ohio Oct. 29, 2007).

In Ohio, property held in a trust is composed of two property interests; one legal, and the other, equitable. Both exist in the property at the same time, and the Ohio Supreme Court has stated that "[i]t has been said many times that the radical idea of a trust is the coexistence of the legal title and the equitable interest, and that perfect ownership is decomposed into its constituent elements of legal title and beneficial interest, which are vested in different persons at the same time." *First Natl. Bank of Cincinnati v. Tenney*, 165 Ohio St. 513, 517, 138 N.E.2d 15, 19 (1956).

A person's beneficial interest in a trust is "largely pecuniary in character," *In re Allen*, 415 B.R. 310, 316 (Bankr. N. D. Ohio 2009), and absent a specific provision in a trust to the contrary, like what would be included in a spendthrift trust, a person's beneficial interest in a trust is generally alienable. *Martin v. Martin*, 54 Ohio St.2d 101, 112, 374 N.E.2d 1384, 1391 (1978); *Yopplo v. Allen (In re Allen)*, 415 B.R. 310, 316 (Bankr. N.D. Ohio 2009).

Under Ohio law, it is well established that a life estate is a freehold estate, and not an estate of inheritance, whereby a tenant holds the property for his or her own life, or the lives of one or more other persons, with the fee then vesting in one or more remainderman at the death of the life-in-being. *Harper v. Ohio Society for Crippled Children, Inc.*, 81 Ohio Law Abs. 91, 158 N.E.2d 747, 750 (1959). Remainder interests under Ohio law, O.R.C. § 2131.04, are fully alienable, whether vested or contingent, and it is a well-established practice for a trustee to sell such interests to satisfy the debts of the remainderman. *See, Kovacs v. Sargent (In re Sargent),* 337 B.R. 661, 666 (Bankr. N.D. Ohio 2006)(*citing, In re Weddie*, 43 B.R. 415 (Bankr. W.D. Va. 1984)).

In Ohio,

> When a testator makes a devise, then further grants the devisee various powers, such as the power to 'use,' 'possess,' 'sell,' or 'consume,' Ohio courts have determined that the testator intended to limit the first devise. *See Johnson v. Johnson* (1894), 51 Ohio St. 446, 38 N.E. 61, (will devising all property to wife 'with full power to bargain, sell, convey, exchange or dispose of the same,' which then provided for property unconsumed upon wife's decease to go to another, held to create only a life estate in wife); *Baxter v. Bowyer* (1869), 19 Ohio St. 490 (will that devised all property to wife, then expressly granted wife power to collect debts, pay bills, and possess and sell property, and then devised property remaining at wife's death to another, held to create only a life estate in wife). *See, also, In re Donner* (May 24,

1988), 4th Dist. No. 1691 (Stephenson, J., dissenting, citing *Johnson* for the proposition that the express addition of powers to words that would otherwise convey a fee simple, when taken in connection with a subsequent devise of a remainder, indicates an intent to give only a life estate)." *Id.* at 420, 38 N.E. 61.

*Kryszan v. Est. of Peterson*, 9th Dist. Summit No. 23041, 2006-Ohio-4725, ¶ 8, 2006 WL 2614289, 2006 Ohio App. LEXIS 4642 (9th Dist. Ohio App. 2006).

There appears to be very little Ohio guidance regarding the transferability of a "right of residence". Some case law posits that a right of residency is akin to a life estate. As the court in *Miller v. Miller* ruled, "[a] devise of the use of property during the life of the devisee is in effect a devise of the property itself for life, as is a gift of the right to live on certain real estate for life." *Miller v. Miller*, 8th Dist. Cuyahoga No. 81287, 2003-Ohio-1342, ¶ 31 (*citing, Gilpin v. Williams* (1867), 17 Ohio St. 396; *Wloszek v. Wloszek* (Apr. 16, 1998), Cuyahoga App. No. 73032; *Swartz v. Gehring* (1892), 6 Ohio Cir. Dec. 173; *Kiester v. Kiester* (1957), 144 N.E.2d 336, 3 Ohio Op.2d 481).

In Indiana, a court discussed a right of residency's similarity to life estates. A seller sold a farm to a buyer, and in the purchase agreement, the sale was contingent upon the seller keeping a right of residency. The handwritten statement executed by the seller and buyer provided that seller would have the privilege of living in the farm home for his lifetime. The court concluded that seller's expressed "'right of residency' for life [wa]s equivalent language to express a life estate." *Krieg v. Hieber*, 802 N.E.2d 938, 945 (Ind. App. 2004); *see also, Gladden v. Jolly*, 655 N.E.2d 590, 592 (Ind. Ct. App. 1995)(holding that in the context of wills that a "devise for or during the devisee's lifetime, or for as long as the devisee shall live, or until the devisee's death, or such similar phrase, creates a life estate in the devisee, unless other provisions show another intent").

Plaintiff argues that his right of residence is similar to a tenancy at will[4], or a non-assignable license[5], but this argument is not well taken. Plaintiff states that "[u]nder Ohio law, a license has been defined as a permission to do some act or series of acts on the land of the licensor, without

---

[4] Tenancies at will are property of the Debtor's estate. *Coates v. Peachtree Apartments (In re Coates)*, 108 B.R. 823, 826 (Bankr. M.D. Ga. 1989).

[5] "Under section 541(c)(1), licenses become property of the estate notwithstanding restrictions on transfer, such as the approval of state officials or execution of papers by the debtor." 5 Collier on Bankruptcy, ¶541.06[3] at 541-36 (16th Ed. 2017); *see also, In re J.R. & C, Inc.*, 157 B.R. 339, 341 (Bankr. N.D. Ohio 1993).

12

having any permanent interest in it", and because a license "'is founded on personal confidence'", it is not assignable. [Doc. # 24-1, p. 7]. Plaintiff also believes that the Irons' Trust language granted him "the right to occupy and posses [sic] the Residence for as long as he wants." [*Id.,* p. 7-8].

The court disagrees with Plaintiff when he states that "[t]he Trust language fails to state that the duration of occupancy is for the life of [Plaintiff] or for the life of another person." [Doc. # 24-1, p. 6]. Section IX(4)(a)(ii) of the Irons' Trust states that "[s]hould [Plaintiff] wish to reside in such residential real property, he shall be permitted to do so under the same terms and conditions as provided the Trustor's spouse under Article IX(2) of this Trust..." [Doc. # 1-2, Pl. Ex. B, 10]. The "same terms and conditions" provided the Trustor's spouse are set forth in Section IX(2)(c), where the Trust states that the right and entitlement of residence of the Trustor's spouse shall terminate upon the death of the Trustor's spouse. The court agrees with Maginnis [Doc. # 28, p. 2] and finds that the plain language of the Irons' Trust would afford Plaintiff the right to reside in the property for the rest of his life.

Plaintiff cites to other case law wherein courts have held that certain interests are not transferrable. In *Magness v. The Dayton Country Club Company*, 972 F.2d 689 (6th Cir. 1992), the Sixth Circuit issued a decision regarding the assignment of personal contracts and a Section 363 sale prohibition when interests are held by others in the subject property. The decision did not involve any analysis of trust benefits, and it does not appear relevant to the matter at hand. Plaintiff also cited to two other cases, *In re Schauer*, 835 F.2d 1222 (8th Cir. 1987) and *In re Trump Entertainment Resorts Inc.*, 526 B.R. 118 (Bankr. Del. 2015), where patronage margin certificates (*Schauer*) and other personal rights (*Trump*) were not assignable, but each case involved express restrictions on transferability based on applicable state law.

The Irons' Trust is subject to Ohio law, and although the case law is admittedly limited, it appears that the right of residency set forth in the Irons' trust is more similar to a life estate than to a non-transferrable licence or tenancy at will. Plaintiff held all of his interests under the Irons' Trust on the Petition Date, and the contingent life interest in the Residence at that time contained equivalent language to that of a life estate.

The Irons' Trust does not describe the "right to reside" as a license. Also weighing against

the "right to reside" being a non-transferable[6] "license" are Ohio cases cited by Plaintiff, *Bewigged by Suzzi, Inc. v. Atlantic Dept. Stores, Inc.*, 49 Ohio App.2d 65, 359 N.E.2d 721 (8th Dist. Ct. App. 1976), and *Fairbanks v. Power Oil Co.*, 81 Ohio App. 116, 77 N.E.2d 499 (3rd Dist. Ct. App. 1945). These cases characterize licenses relating to real property as "usually subject to revocation". *Bewigged*, 49 Ohio App.2d at 69, 359 N.E.2d at 725; *Fairbanks*, 81 Ohio App. at 123, 77 N.E.2d at 503. In this case, the "right to reside" was not subject to revocation.

Moreover, in distinguishing between a lease and a license, the Ohio Supreme Court has stated: "A license to do an act upon land involves exclusive occupation of the land by the licensee so far as is necessary to do the act and no further, whereas a lease gives the right of possession of the land and the exclusive occupation of it for all purposes not prohibited by its terms." *DiRenzo v. Cavalier*, 165 Ohio St. 386, 389 135 N.E.2d 394, 396 (Ohio 1956). The "right to reside" in issue here is a broader right than the more limited rights of a licensee that *DiRenzo* describes. It would be a right to use all of the property continuously until Plaintiff's death.

Accordingly, the court finds that the interest created in the Trust through the "right to reside" language was in the nature of, or akin to, a contingent life estate, and Ohio law did not prevent the conveyance of the "right to reside" to Bellevue.

Therefore, when this court entered the Sale Order and the Sale Confirmation Order, the sale of any and all interests of Plaintiff as a limited partner in the partnership and as a beneficiary of the Trust assets of the bankruptcy estate were authorized to be sold, and were sold, to Bellevue. The Sale Confirmation Order specifically stated that Assets, as defined in the Background section of this opinion, were transferred to the buyer, Bellevue, "free and clear of any and all liens, claims or interests, including but not limited to any and all claims, known or unknown, that could have been asserted by . . . any beneficiary or beneficiaries of the Trust . . . against the Assets . . ." [Case No.

---

[6]/ Legal rights denominated as a "license" are regularly sold in bankruptcy cases. *See*, *Bavely v. United States (In re Terwillinger's Catering Plus, Inc.)*, 911 F.2d 1168 (6th Cir. 1990)(allowing sale of Ohio liquor license); *In re Sigma OH Indus., Inc.*, 2010 Bankr. LEXIS 4269 at *11 (Bankr. N.D. Ohio April 26, 2010)(sale of corporate assets included "licenses"); *In re Shary*, 152 B.R. 724, 727 (Bankr. N.D. Ohio 1993)("In summary, the sale was duly authorized, conducted and confirmed without opposition pursuant to §§ 363(b) and (f) free and clear of liens and other security interests. Neither the State's Department of Taxation nor its Liquor Control Board objected to any of the above-mentioned judicial processes. The D-5 liquor license, as of the commencement of the case, constituted estate property pursuant to 11 U.S.C. 541(a). No constraints exist under the Bankruptcy Code to thwart an immediate conveyance of the license to the purchaser of the Debtor's assets. To the extent that applicable state law provides to the contrary, the same is specifically preempted by federal bankruptcy law as set forth herein.").

14

12-32449, Doc. # 339, ¶ 6]. Plaintiff's right of residency was included in that sale, and if there is any continuing right of residency, it is now held by Bellevue.

In the alternative, if the court were to rule that the right of residency was not or could not be included in the sale of Plaintiff's trust benefits to Bellevue, the right of residency would still be included in the bankruptcy estate, for the Chapter 7 Trustee to administer as property of the debtor's estate.

## IV. *Res Judicata*

Because Plaintiff sold all his rights and interests under the Irons' Trust, including his right to reside in or occupy the Residence, Defendants assert he cannot now seek injunctive and declaratory relief to remain in the Residence. It is Defendants' argument that the case should be dismissed on the principle of *res judicata*.

"Under *res judicata*, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411,(1980) (citations omitted). When determining the preclusive effect of federal court judgments, a court may look to the common law or to the policies supporting *res judicata*. *Id.* at 96, 101 S.Ct. 411.

A claim is barred by claim preclusion if: (1) there has been a final decision on the merits by a court of competent jurisdiction; (2) the subsequent action is between the same parties or their privies; (3) the issue in the subsequent action was or should have been litigated in the prior action; and (4) there is identity between the causes of action. *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 880 (6th Cir.1997).

Plaintiff's two causes of action in the instant adversary proceeding relate to whether or not Plaintiff possessed a right to reside in the property after his mother would no longer be living in the Residence. The court has found that Plaintiff sold said right, and Plaintiff does not dispute that the first two elements of claim preclusion have been met. Plaintiff agrees that the Order granting Summary Judgment and the Sale Order constitute final decisions on the merits by a court of competent jurisdiction, and that this current adversary proceeding is a subsequent action between the same parties. [Doc. # 24-2, p. 10]. However, he contends that elements 3 and 4 have not been met. The court disagrees.

Under the third element of *res judicata*, "'what is important is not whether a particular claim

15

is compulsory, but whether the claim should have been considered during the prior action.' " *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 580 (6th Cir.2008)(*quoting, Sanders Confectionery Prods. Inc. v. Heller Fin. Inc.*, 973 F.2d 474, 484 (6th Cir.1992)). The fourth and final element—an "identity of the causes of action"—is established "if 'the claims arose out of the same transaction or a series of transactions, or ... the claims arose out of the same core of operative facts.' " *Browning v. Levy*, 283 F.3d 761, 773–74 (6th Cir.2002). "Identity of causes of action means an 'identity of the facts creating the right of action and of the evidence necessary to sustain each action.'" *Sanders Confectionery Prods.*, 973 F.2d at 480 (*quoting, Westwood Chem. Co. v. Kulick*, 656 F.2d 1224, 1227 (6th Cir.1981)).

The issue in the current action was not litigated in the prior action, but it could have and should have been. Notice was issued that "any and all of the interests of Logan R. Irons as a beneficiary under the Trust were going to be sold. [Case No. 12-32449, Doc. # 308]. Plaintiff had sufficient notice of the Sale Motion, the Sale Order, the Sale Confirmation Order, and the APA. He never raised an objection to, or appealed, any of the aforementioned orders, when he had ample opportunities to do so. The sale of his interests in the Irons' Trust assets was confirmed, and Plaintiff should not have waited until long after the sale was confirmed to challenge his right of residency. Therefore, the third element of claim preclusion is met.

Finally, there is an identity between the causes of action. The Chapter 7 Trustee filed an adversary proceeding in this court, and the complaint sought a declaratory judgment that Plaintiff's interests in the "Property Rights of the . . . Trust are assets of the Bankruptcy Estate." [Case No. 14-3055, Doc. # 1]. The order granting summary judgment in that adversary proceeding [*Id.*, Doc. # 34] held that:

> [T]he interests of [Plaintiff] as a limited partner in the D. Ross Irons Partnership . . . and as a beneficiary of the D. Ross Irons Trust Agreement dated June 14, 2000 and as amended and restated on June 26, 2006 are held to be assets of the Bankruptcy Estate in Case No. 12-32449 . . . .

[*Id.,* at p. 3].

Plaintiff did not object to or appeal the order granting summary judgment, and he did not assert in Case No. 14-3055 that any interest of his was excluded from his Chapter 7 Bankruptcy Estate. His Residence interest, as an interest of Plaintiff as a beneficiary of the Irons' Trust, was at issue in that proceeding. The facts in evidence in that adversary proceeding, in the bankruptcy sale

proceedings, and in this current adversary proceeding were all necessary to sustain any claim Plaintiff may have brought to seek a declaratory judgment and injunctive relief. In other words, an identity of the causes of action has been established, because the claims in the current adversary arose out of the same core of operative facts that were established in the previous adversary case and the Asset sale in the Chapter 7.

As Plaintiff sold his right of residence during the Asset sale that occurred during the underlying Chapter 7 case, and because his claims are barred by the doctrine of *res judicata*, the court will grant Defendants Maginnis' and Bellevue's Motions to Dismiss. As the Motions to Dismiss will be granted, Maginnis' and Plaintiff's Motions for Summary Judgment are hereby denied as moot.

For all of the foregoing reasons, good cause appearing,

**IT IS ORDERED** that Defendant Maginnis' Motion to Dismiss [Doc. # 4] and Defendant Bellevue's Motion to Dismiss [Doc. # 5] be, and hereby are, **GRANTED,** and Defendant Maginnis' Motion for Summary Judgment [Doc. # 4] and Plaintiff's Motion for Summary Judgment [Doc. # 24] be, and hereby are, **DENIED as moot.**